THOMAS E. PATTERSON (CA Bar No. 130723)
MICHAEL L. TUCHIN (CA Bar No. 150375)
DAVID M. GUESS (CA Bar No. 238241)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California  90067-6049
Telephone:        (310) 407-4000
Facsimile:        (310) 407-9090
Reorganization Counsel for
Debtors and Debtors in Possession

LENARD E. SCHWARTZER (NV Bar No. 0399)
JEANETTE E. McPHERSON (NV Bar No. 5423)
SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone:        (702) 228-7590
Facsimile:        (702) 892-0122
Local Bankruptcy Counsel for
Debtors and Debtors in Possession

MARK SHINDERMAN (CA Bar No. 136644)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California  90017
Telephone:        (213) 892-4411
Facsimile:        (213) 593-2801
Special Counsel for Official Committee
of Creditors Holding Unsecured Claims

KAARAN E. THOMAS (NV Bar No. 7193)
RYAN WORKS (NV Bar No. 9224)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada  89102
Telephone:        (702) 873-4100
Facsimile:        (702) 873-9966
Counsel for Official Committee
of Creditors Holding Unsecured Claims

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Chapter 11 |
| LAKE AT LAS VEGAS JOINT VENTURE, LLC<br>☒ Affects this Debtor | Case No. 08-17814-LBR |
| LLV-1, LLC<br>☒ Affects this Debtor | Case No. 08-17815-LBR |
| LLV HOLDCO, LLC<br>☒ Affects this Debtor | Case No. 08-17817-LBR |
| LAKE LAS VEGAS PROPERTIES, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17820-LBR |
| LLV FOUR CORNERS, LLC<br>☒ Affects this Debtor | Case No. 08-17822-LBR |
| NORTHSHORE GOLF CLUB, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17825-LBR |
| P-3 AT MONTELAGO VILLAGE, LLC<br>☒ Affects this Debtor | Case No. 08-17827-LBR |
| THE GOLF CLUB AT LAKE LAS VEGAS, LLC<br>☒ Affects this Debtor | Case No. 08-17830-LBR |
| MARINA INVESTORS, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17832-LBR |
| THE VINEYARD AT LAKE LAS VEGAS, L.L.C.<br>☒ Affects this Debtor | Case No .08-17835-LBR |
| LLV VHI, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17837-LBR |
| TCH DEVELOPMENT, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17841-LBR |
| TC TECHNOLOGIES, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17842-LBR |
| SOUTHSHORE GOLF CLUB, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17844-LBR |
| NEVA HOLDINGS, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17845-LBR |

Jointly Administered Under Case No. BK-S-08-17814-LBR

NOTICE OF SUBMISSION OF REDLINED CHANGES TO "THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY LAKE AT LAS VEGAS JOINT VENTURE, LLC AND ITS JOINTLY-ADMINISTERED CHAPTER 11 AFFILIATES AND THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS (DATED MARCH 25, 2010), AS MODIFIED"

(AFFECTS ALL DEBTORS)

☒ AFFECTS ALL DEBTORS

Debtors.

1    **PLEASE TAKE NOTICE** that attached hereto is a redline showing changes to the

2    *Third Amended Chapter 11 Plan of Reorganization Proposed by Lake at Las Vegas Joint Venture,*

3    *LLC and its Jointly-Administered Chapter 11 Affiliates and the Official Committee of Creditors*

4    *Holding Unsecured Claims (Dated March 25, 2010), as Modified* [Docket No. 2138].

5

6    DATED:  June 17, 2010                               */s/ David M. Guess*

7                                                                        DAVID M. GUESS, an Attorney with
                                                                         KLEE, TUCHIN, BOGDANOFF & STERN LLP

8                                                                        Reorganization Counsel for
                                                                         Debtors and Debtors in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

THOMAS E. PATTERSON (CA Bar No. 130723)
MICHAEL L. TUCHIN (CA Bar No. 150375)
DAVID M. GUESS (CA Bar No. 238241)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California  90067-6049
Telephone:       (310) 407-4052
Facsimile:        (310) 407-9090
Reorganization Counsel for
Debtors and Debtors in Possession

LENARD E. SCHWARTZER (NV Bar No. 0399)
JEANETTE E. McPHERSON (NV Bar No. 5423)
SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:       (702) 228-7590
Facsimile:        (702) 892-0122
Local Bankruptcy Counsel for
Debtors and Debtors in Possession

MARK SHINDERMAN (CA Bar No. 136644)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California  90017
Telephone:       (213) 892-4411
Facsimile:        (213) 593-2801
Special Counsel for Official Committee of Creditors Holding
Unsecured Claims

KAARAN E. THOMAS (NV Bar No. 7193)
RYAN WORKS (NV Bar No. 9224)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada  89102
Telephone:       (702) 873-4100
Facsimile:        (702) 873-9966
Counsel for Official Committee of Creditors Holding
Unsecured Claims

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE:  (310) 407-4000

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Chapter 11 |
| LAKE AT LAS VEGAS JOINT VENTURE, LLC<br>☒ Affects this Debtor | Case No. 08-17814-LBR |
| LLV-1, LLC<br>☒ Affects this Debtor | Case No. 08-17815-LBR<br>Case No. 08-17817-LBR |
| LLV HOLDCO, LLC<br>☒ Affects this Debtor | Case No. 08-17820-LBR<br>Case No. 08-17822-LBR |
| LAKE LAS VEGAS PROPERTIES, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17825-LBR<br>Case No. 08-17827-LBR |
| LLV FOUR CORNERS, LLC<br>☒ Affects this Debtor | Case No. 08-17830-LBR<br>Case No. 08-17832-LBR |
| NORTHSHORE GOLF CLUB, L.L.C.<br>☒ Affects this Debtor | Case No. 08-17835-LBR<br>Case No. 08-17837-LBR |
| P-3 AT MONTELAGO VILLAGE, LLC<br>☒ Affects this Debtor | Case No. 08-17841-LBR<br>Case No. 08-17842-LBR |
| THE GOLF CLUB AT LAKE LAS VEGAS, LLC<br>☒ Affects this Debtor | Case No. 08-17844-LBR<br>Case No. 08-17845-LBR |
| MARINA INVESTORS, L.L.C.<br>☒ Affects this Debtor | **Jointly Administered Under Case No. BK-S-08-17814-LBR** |
| THE VINEYARD AT LAKE LAS VEGAS, L.L.C.<br>☒ Affects this Debtor | **THIRD AMENDED CHAPTER 11 PLAN OF** |
| LLV VHI, L.L.C.<br>☒ Affects this Debtor | **REORGANIZATION PROPOSED BY LAKE AT LAS VEGAS**<br>**JOINT VENTURE, LLC AND ITS JOINTLY-ADMINISTERED** |
| TCH DEVELOPMENT, L.L.C.<br>☒ Affects this Debtor | **CHAPTER 11 AFFILIATES AND THE OFFICIAL**<br>**COMMITTEE OF CREDITORS HOLDING UNSECURED**<br>**CLAIMS (DATED JUNE 17, 2010)** |
| TC TECHNOLOGIES, L.L.C.<br>☒ Affects this Debtor | |
| SOUTHSHORE GOLF CLUB, L.L.C.<br>☒ Affects this Debtor | **(AFFECTS ALL DEBTORS)** |
| NEVA HOLDINGS, L.L.C.<br>☒ Affects this Debtor | |
| ☒ AFFECTS ALL DEBTORS<br>Debtors. | |

Deleted: MARCH 25

Deleted: , AS MODIFIED

      b.    Classes 10D, 10F, 10G, 10H, 10I, 10K, 10L, 10M, 10N, and

          10O...................................................................................45

III.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................45

    A.    Assumption of Executory Contracts and Unexpired Leases....................45

        1.    Assumption of Agreements.............................................................45

        2.    Cure Claims. ................................................................................46

        3.    Objections to Assumption.............................................................46

        4.    Resolution of Claims Relating to Assumed Agreements................47

    B.    Rejection of Executory Contracts and Unexpired Leases........................47

        1.    Rejected Agreements. ...................................................................47

        2.    Special Provision for Recorded "Development CC&Rs"..............47

        3.    Bar Date for Rejection Damage Claims.........................................48

    C.    Deferment of the Assumption or Rejection of Certain Contracts.............48

    D.    Post-Petition Contracts and Leases.......................................................49

IV.    MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN...........................49

    A.    Substantive Consolidation. ...................................................................49

    B.    Exit Facility/Pump Station Loan...........................................................49

    C.    Funding of the Plan...............................................................................50

    D.    Creation of the Creditor Trust and Appointment of the Creditor Trustee. .................50

        1.    Management of the Creditor Trust.................................................50

        2.    Funding of the Creditor Trust. ......................................................51

        3.    Powers and Duties.........................................................................51

        4.    Terms of Loan to Creditor Trust. .................................................53

        5.    Distribution of Litigation Proceeds...............................................53

        6.    The Termination of the Creditor Trust..........................................54

        7.    Additional Provisions of the Creditor Trust Agreement................54

    E.    Creation of the Falls Improvement Trust and Appointment of the

        Falls Improvement Trustee. ..................................................................54

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16

Deleted: T-16

ii

1.  Management of the Falls Improvement Trust..............................55

2.  Funding of the Falls Improvement Trust. ...............................56

3.  The T-16 Improvement Project Manager. ...........................57

4.  The Pre-Petition Lender LID Contribution...........................57

5.  Powers and Duties....................................................58

6.  The T-16 Improvement MAC Payments. .........................60

7.  The Termination of the Falls Improvement Trust.................60

8.  Additional Provisions of the Falls Improvement Trust Agreement................60

9.  No Effect on T-12 LID or T-16 LID........................................62

F.  Revesting of Assets.........................................................63

G.  Preservation/Revesting of Rights of Action/No Waiver of Claims. ...........................63

H.  Objections to Claims......................................................66

I.  Distribution of Property Under the Plan. ................................66

1.  Manner of Payments Under the Plan. .........................67

2.  No *De Minimis* Distributions. .....................................67

3.  No Distribution With Respect to Disputed Claims. ...........67

4.  Distributions to Pre-Petition Lenders and DIP Lenders. ......67

5.  Delivery of Distributions and Undeliverable/Unclaimed Distributions. ........67

a.  Delivery of Distributions in General......................67

b.  Undeliverable and Unclaimed Distributions..............68

c.  Estimation of Disputed Claims for Distribution Purposes...........69

J.  Cancellation of Interests. .................................................69

K.  Full Satisfaction. ..........................................................69

L.  D&O Liability Policy......................................................70

M.  Reserved....................................................................70

N.  Compliance with Tax Requirements.....................................70

O.  Setoff, Recoupment and Other Rights. .................................70

P.  Conditions to Effectiveness. .............................................71

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

iii

## LIST OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| A | Reorganized Debtors' Board of Managers |
| B | Operating Agreements for Reorganized LLV Holdco, the Other Reorganized Debtors, and LLV LID Loan Holder |
| C | *Reserved* |
| D | Exit Facility Credit Agreement |
| E | Creditor Trust Agreement |
| F | Phase II Landowner Settlement Agreement |
| G | Mechanics' Lien Note |
| H | Initial Creditor Trustee and Creditor Trust Board of Advisors |
| I | Potential Defendants in Insider Actions |
| J | Falls Improvement Trust Agreement |
| K | Schedules of Assumed Agreements (with Cure Amounts), Rejected Agreements and Deferred Agreements |
| L | Initial Falls Improvement Trustee and Falls Improvement Trust Board of Advisors |
| M | Falls Improvement Trust Credit Agreement |
| N | X-West Approved Model |
| O | Atalon Management Agreement |
| P | New Warrants in Reorganized LLV Holdco |
| Q | Pump Station Credit Agreement |
| R | T-16 Improvement Vendor Settlement Agreements |

Deleted: Term Sheet for
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: Board
Deleted: Term Sheet for T-16
Deleted: Term Sheet
Deleted: Debtors
Deleted: Term Sheet for

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

vi

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310)-407-4000

A term sheet describing the material terms of the Atalon Management Agreement is attached as <u>Exhibit O</u> to the Plan.  A final form of the Atalon Management Agreement shall be Filed by the Exhibit Filing Date and, upon such Filing, shall become Exhibit O to the Plan.

**"Avoidance Actions"** means all claims and causes of action held by any Debtor or its Estate that arise pursuant to sections 544-553 of the Bankruptcy Code, excluding (i) the Insider Actions, (ii) causes of action against Credit Suisse, in any capacity, the DIP Agent, the Pre-Petition Agent or any lenders under any of the Pre-Petition Credit Agreements or the DIP Facility, and (iii) causes of actions against the Associated Released Parties of Credit Suisse, the DIP Agent, the Pre-Petition Agent or the lenders described in clause (ii) of this definition.

**"Ballot"** means the ballot to vote to accept or reject the Plan.

**"Ballot Tabulator"** means Kurtzman Carson Consultants LLC, or any other entity designated by the Debtors to tabulate Ballots.

**"Ballot Deadline"** means the deadline established by the Court for the delivery of executed Ballots to the Ballot Tabulator.

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as the same may be amended from time to time to the extent applicable to the Cases.

**"Bankruptcy Rules"** means, collectively, (a) the Federal Rules of Bankruptcy Procedure and (b) the local rules of the Court, as applicable in the Cases.

**"Business Day"** means a day that is not a Saturday, Sunday, or legal holiday.

**"Carmel"** means Carmel Land & Cattle Company.

**"Carmel Settlement Condition"** means Carmel either (i) executes a Phase II Landowner Settlement Agreement that provides that it and certain designated parties, acceptable to the Debtors and the DIP Agent, agree not to take action or avoid acting, with the intent or for the purpose of causing a T-16 Improvement MAC Event, or (ii) otherwise agrees to be bound by the terms of such Agreement on terms acceptable to the Debtors and the DIP Agent, including the agreement to convey the P-40 Pump Station and surrounding real estate, in either case, prior to the Effective Date or such later date as the Reorganized Debtors and the Falls Improvement Trustee jointly determine, but in no event later than sixty (60) days following the Effective Date.

**Deleted:** T-16

3

**"Disbursing Agent"** means the Reorganized Debtors, the Creditor Trust, the Falls Improvement Trust, the DIP Agent or the Pre-Petition Agent, as applicable, or any entity employed or retained by any of the foregoing to serve as disbursing agent under the Plan.

**"Discharged Liabilities"** has the meaning ascribed to it in Section VII.A of the Plan.

**"Disclosure Statement"** means the disclosure statement to accompany the Plan, as it subsequently may be modified or amended, and all exhibits thereto.

**"Disputed Claim"** means (i) with respect to a Claim arising before the Petition Date (including a 503(b)(9) Claim), a Claim, or any portion thereof, as to which a proof of Claim has been filed or is deemed filed under Bankruptcy Rule 3003(b), and an objection or complaint with respect to such Claim (a) has been timely filed; and (b) has not been overruled or adjudicated against the objector by the Court pursuant to a Final Order or withdrawn, and (ii) with respect to an Administrative Claim, a Claim as to which a party in interest has objected within, if applicable, the time fixed for making such objection.

**"Effective Date"** means the first Business Day (a) that is at least fourteen (14) days after the Confirmation Date; (b) on which no stay of the Confirmation Order is in effect; and (c) on which the conditions set forth in Section IV.P.1 have been satisfied or waived by the Debtors and the DIP Agent.

**"Estates"** means the estates created in the Cases under 11 U.S.C. § 541.

**"Exhibit Filing Date"** means May 11, 2010, at noon Pacific daylight savings time.

**"Exit Facility"** means a senior secured revolving credit facility provided by some or all of the DIP Lenders in an initial amount of $24,000,000 designed to permit the Reorganized Debtors to continue their operations, to permit the Reorganized Debtors' to satisfy their Plan obligations on and after the Effective Date, to provide the Reorganized Debtors a source of funds with which to advance the Falls Improvement Trust Loan, and to provide a source for the Reorganized Debtors to advance the Creditor Trust Loan. The Exit Facility also includes the right of participating lenders under the Exit Facility to receive their Pro Rata share of 5% of the New Membership Interests in Reorganized LLV Holdco on account of such participation.

**"Exit Facility Documents"** means the financing documents with respect to the Exit Facility. A term sheet describing the principal terms of the Exit Facility Documents is attached as Exhibit D to

7

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16

Deleted: T-16

the Plan.  A final form of the Exit Facility Documents shall be Filed by the Credit Agreement Filing Date and, upon such Filing, shall become Exhibit D to the Plan.  A commitment letter containing the principal terms of the Exit Facility will be obtained, and a related budget will be prepared, no later than April 2, 2010, at which time such commitment letter and such budget will be Filed.

**"Falls Improvement Trust**" or **"T-16 Improvement Trust"** means the trust to be established on the Effective Date pursuant to the Plan, and governed pursuant to the Falls Improvement Trust Agreement if the Phase II Landowner Settlement Condition is satisfied.

**"Falls Improvement Trust Agreement"** or **"T-16 Improvement Trust Agreement"** means the agreement pursuant to which the Falls Improvement Trust will be formed, implemented and governed.  A substantially final form of the Falls Improvement Trust Agreement is attached as Exhibit J to the Plan.  Any revisions or amendments thereto shall be filed by the Exhibit Filing Date and, upon such Filing, shall thereupon become Exhibit J to the Plan.

**"Falls Improvement Trust Assets"** or **""T-16 Improvement Trust Assets"** means all of the following:

(a)    the Debtors' T-16 Improvement Payment Rights and the proceeds thereof, which shall be deemed assigned to the Falls Improvement Trust on the Effective Date;

(b)    the loan proceeds under the X-West Loan and, if applicable, the X-West Supplemental Loan, X-East Loan and Remainder Segments Loan, including, if the T-16 Improvement MAC Event occurs, the T-16 Improvement MAC Payments;

(c)    if the Carmel Settlement Condition has not occurred, the loan proceeds under the Supplemental Pump Station Financing;

(d)    the benefit of the Pre-Petition Lender LID Contribution;

(e)    the sum of $80,000 to compensate and reimburse the expenses of the Falls Improvement Trustee through the completion of the X-West Approved Model; and

(f)    all of the Creditors' Committee's rights and interests in the LID Acquisition Litigation.

**"Falls Improvement Trust Credit Agreement"** or **"T-16 Improvement Trust Credit Agreement"** means the credit agreement pursuant to which the Reorganized Debtors will provide the Falls Improvement Trust with the Falls Improvement Trust Loan if the Phase II Landowner

8

Settlement Condition is satisfied.    A term sheet describing the principal terms of the Falls Improvement Trust Credit Agreement is attached as Exhibit M to the Plan.  A final form of the Falls Improvement Trust Credit Agreement shall be Filed by the Credit Agreement Filing Date and, upon such Filing, shall become Exhibit M to the Plan.

**"Falls Improvement Trust Loan"** or **"T-16 Improvement Trust Loan"** means, collectively, (i) the X-West Loan and, if the Carmel Settlement Condition is not satisfied, the X-West Supplemental Loan, (ii) if the X-East Conditions are satisfied, the X-East Loan, and (iii) if the Remainder Segments Conditions are satisfied, the Remainder Segments Loan.

**"Falls Improvement Trustee"** or **"T-16 Improvement Trustee"** means the trustee of the Falls Improvement Trust.  Andrewglen Holdings, LLC shall be the initial Falls Improvement Trustee.

**"Filed"** means duly and properly filed with the Court and reflected on the Court's official docket.  **"File," "Files,"** and **"Filing"** are all conjugations of Filed.

**"Final Order"** means an order or judgment of the Court entered on the Court's official docket, or an order or judgment made in accordance with Article VI hereof or pursuant to the terms of the Creditor Trust Agreement or the Falls Improvement Trust Agreement by a court of competent jurisdiction:

> (a)    that has not been reversed, rescinded, stayed, modified, or amended;

> (b)    that is in full force and effect; and

> (c)    with respect to which:  (1) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely-filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (2) any such appeal or petition has been withdrawn, dismissed or resolved by the highest court to which the order or judgment was timely appealed or from which review, rehearing, remand, or a writ of certiorari was timely sought.

Notwithstanding the foregoing, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to any such order shall not prevent such order from being a "Final Order."

**"General Unsecured Claim"** means a Claim that is not secured by a lien on property of the Estates or subject to a right of setoff pursuant to section 553 of the Bankruptcy Code and that is not an

**Deleted:** T-16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE:  (310) 407-4000

9

Administrative Claim, a Priority Claim, or a Priority Tax Claim. "General Unsecured Claims" includes unsecured deficiency Claims of holders of Secured Claims, but, except with respect to the Pre-Petition Lender Class 7J Claims, does not include any unsecured claims of the Pre-Petition Lenders.

**"Gross Pre-Petition Lender Claims"** means the Claims held by the Pre-Petition Agent and/or the Pre-Petition Lenders on the Effective Date under the Pre-Petition Credit Facility, inclusive of any and all adequate protection claims and Claims for participating cash flow or other participating interest. As of the Petition Date the Gross Pre-Petition Lender Claims included the principal amount of approximately $622,000,000 and accrued but unpaid interest of approximately $4,400,000. The Gross Pre-Petition Lender Claims are Allowed Claims.

**"Impair" or "Impaired"** has meaning ascribed to it in section 1124 of the Bankruptcy Code.

**"Insider Actions"** means the claims and causes of action held by any Debtor or its Estate against the persons or entities, and their affiliates, successors and assigns, who are listed on Exhibit I to the Plan, including those claims and causes of action listed on Exhibit 7 to the Disclosure Statement against such persons or entities, excluding only claims and causes of action against any such person or entity that are expressly released pursuant to the Plan. Any revisions or amendments thereto shall be filed by the Exhibit Filing Date and, upon such Filing, shall thereupon become Exhibit I to the Plan.

**"Intercompany Claims"** means all Claims (whether arising from contract, tort or otherwise) held by any of the Debtors against any other Debtor, whether or not a proof of Claim is filed or deemed filed pursuant to Bankruptcy Code section 501 in any of the Cases.

**"Interest"** means the interest, whether or not asserted, of any holder of an equity security of the Debtors, as defined in Bankruptcy Code section 101(17), and includes all membership interests and other ownership interests in the Debtors, options, warrants and other instruments or right to participate in the profits of the Debtors or their operations, and rights to acquire or receive any of the foregoing interests.

**"LID Acquisition"** means LID Acquisition, LLC.

**"LID Acquisition Claim"** means the Secured Claim asserted by LID Acquisition against LLV-1 relating to the T-16 LID.

**"LID Acquisition Litigation"** means the litigation commenced by LLVJV, LLV-1 and the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Deleted: include

Deleted: do

_

(e)     Prepayment Penalty:  None.

(f)     Issuer:  The issuer(s) of each Mechanics' Lien Note shall be the Reorganized Debtor(s) whose predecessor(s)-in-interest's property was subject to the Mechanics' Lien held by such holder.

A substantially final form of the Mechanics' Lien Note is attached as <u>Exhibit G</u> to the Plan. Any revisions or amendments thereto shall be filed by the Exhibit Filing Date and, upon such Filing, shall thereupon become Exhibit G to the Plan.

**"MPOA"** means the Lake Las Vegas Master Property Owners' Association.

**"Net Litigation Proceeds"** means the actual cash proceeds of the Avoidance Actions and Insider Actions less (i) all expenses, fees and obligations incurred in generating such proceeds, including all attorneys' fees and expenses, expert witness fees and expenses and court costs and (ii) amounts necessary to repay any Creditor Trust Loan.

**"Net T-16 Improvement Payment Proceeds"** means the actual cash proceeds of the T-16 Improvement Payment Rights less all post-Effective Date expenses incurred in generating such proceeds, including the costs and expenses incurred by the Falls Improvement Trust (including litigation and other costs related to the T-16 LID Bond and LID Acquisition and the repayment of any indebtedness incurred by the Falls Improvement Trust) in excess of the initial distribution to fund the Falls Improvement Trust and the cost and expense of compensating entities that provide goods or services from and after the Effective Date for the purpose of completing construction of the T-16 LID segments.

**"New Membership Interests"** means the membership interests in Reorganized LLV Holdco, Reorganized LLVJV, Reorganized LLV-1, Reorganized LLV Four Corners, and Reorganized Vineyard.

The New Membership Interests will have the following attributes:

(a)     <u>Authorization and Issuance</u>.  The Operating Agreement will authorize the issuance of New Membership Interests, subject to further amendment after the Effective Date.

(b)     <u>Rights</u>.  The New Membership Interests shall have such rights with respect to dividends, liquidations, voting, and other matters as are set forth in the Operating Agreement and as

12

**Deleted:** T-16

**Deleted:** T-16

**Deleted:** T-16

1   **"Petition Date"** means July 17, 2008.

2   **"Phase I"** means the section of the Community commonly referred to as "Phase I," as

3   depicted on the map attached as <u>Exhibit 3</u> to the Disclosure Statement.

4   **"Phase II"** means the section of the Community commonly referred to as "Phase II," as

5   depicted on the map attached as <u>Exhibit 3</u> to the Disclosure Statement.

6   **"Phase II Landowner"** means any of the following entities that has timely made the Phase II

7   Landowner Claims Election: Carmel, Coleman-Toll Limited Partnership, CW Capital Fund One, LLC,

8   Pleasant Valley Investments LLC, Strategic Capital LLV LLC, and Woodside Provence, LLC.

9   **"Phase II Landowner Claim"** means the Claim of a Phase II Landowner.

10  **"Phase II Landowner Claims Election"** means the timely election by Carmel, Coleman-Toll

11  Limited Partnership, CW Capital Fund One, LLC, Pleasant Valley Investments LLC, Strategic Capital

12  LLV LLC, or Woodside Provence, LLC to have its Claim classified as a Phase II Landowner Claim.

13  <u>How to Make the Phase II Landowner Claims Election</u>.   A Phase II Landowner that has

14  entered into the Phase II Landowner Settlement Agreement no later than May 12, 2010 shall be

15  deemed to have timely made the Phase II Landowner Claims Election, and no further or other action

16  by such entity shall be required; <u>provided</u>, <u>however</u>, that the last day for Carmel to make the Phase II

17  Landowner Claims Election shall be the last day for satisfaction of the Carmel Settlement Condition.

18  <u>Other Terms and Conditions of the Phase II Landowner Claims Election</u>.   By making the

19  Phase II Landowner Claims Election, a Phase II Landowner (i) releases and forever discharges

20  (a) the Debtors, (b) the Reorganized Debtors, (c) Atalon and Present Management, (d) the Creditors'

21  Committee, (e) members of the Creditors' Committee in their capacity as such, (f) Credit Suisse, the

22  Pre-Petition Agent and the DIP Agent, (g) any DIP Lender or Pre-Petition Lender that provides a

23  mutual release, and (h) with respect to the entities described in (c), (d), (f), and (g), their Associated

24  Released Parties from any and all Released Claims (excepting only such claims and obligations

25  solely arising out of, or expressly preserved by, the Plan or the Phase II Landowner Settlement

26  Agreement), and (ii) releases any and all liens or security interests held by such Phase II Landowner

27  against property of the Estates or landowners within the Community.   By making the Phase II

28

**Deleted:** April 9

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

14

Landowner Claims Election, a Phase II Landowner also becomes obligated to execute all documentation reasonably requested by the Reorganized Debtors to implement this paragraph.

The making of a Phase II Landowner Claims Election shall have no bearing on the amount of any Phase II Landowner Claim that is ultimately Allowed or Disallowed.

**"Phase II Landowner Settlement Agreement"** means the settlement agreement entered into by and between the Debtors, the Creditors' Committee and the Phase II Landowners. A substantially final form of the Phase II Landowner Settlement Agreement is attached as <u>Exhibit F</u> to the Plan. Any revisions or amendments thereto shall be filed by the Exhibit Filing Date and, upon such Filing, shall thereupon become Exhibit F to the Plan.

**"Phase II Landowner Settlement Condition"** means that Coleman-Toll Limited Partnership, Pleasant Valley Investments LLC, Strategic Capital LLV LLC, and Woodside Provence, LLC have each timely made the Phase II Landowner Claims Election.

**"Phase III"** means the section of the Community commonly referred to as "Phase III," as depicted on the map attached as <u>Exhibit 3</u> to the Disclosure Statement.

**"Plan"** means this "Third Amended Chapter 11 Plan of Reorganization Proposed by Lake at Las Vegas Joint Venture, LLC and its Jointly-Administered Chapter 11 Affiliates and the Official Committee of Creditors Holding Unsecured Claims (Dated June 17, 2010)" as it subsequently may be further modified or amended.

**"Pre-Petition Agent"** means Credit Suisse in its capacities as Collateral Agent, Administrative Agent, Syndication Agent, Sole Arranger, Sole Bookrunner, Fronting Bank, Paying Agent and original Lender and any other non-participating Lender capacity, as applicable, under or related to the Pre-Petition Credit Agreements.

**"Pre-Petition Credit Agreements"** means (i) that certain Credit Agreement dated as of November 1, 2004, by and among Lake at Las Vegas Joint Venture, a general partnership and LLV-1, as Borrowers, the lenders listed therein, as Lenders, and the Pre Petition Agent, as subsequently modified or amended, (ii) that certain Second Lien Credit Agreement dated as of November 1, 2004, by and among Lake at Las Vegas Joint Venture, a general partnership and LLV-1, as Borrowers, the lenders listed therein, as Lenders, and the Pre-Petition Agent, as subsequently

**Deleted:** March 25

**Deleted:** , As Modified

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone: (310) 407-4000

15

modified or amended; (iii) that certain Amended and Restated Credit Agreement, dated as of May 4, 2005, by and among Lake at Las Vegas Joint Venture, a general partnership and LLV-1, as Borrowers, the lenders listed therein, as Lenders, and the Pre Petition Agent, as subsequently modified or amended, and (iv) the Pre-Petition Credit Facility.

**"Pre-Petition Credit Facility"** means that certain Amended and Restated Credit Agreement (originally dated as of May 4, 2005) dated as of June 22, 2007, by and among LLVJV and LLV-1, as Borrowers, the lenders listed therein, as Lenders, and the Pre Petition Agent, as subsequently modified or amended by those certain amendments dated as of September 24, 2007, October 22, 2007, November 14, 2007, December 26, 2007, January 2, 2008, January 23, 2008 and June 20, 2008.

**"Pre-Petition Lenders"** means the lenders under the Pre-Petition Credit Facility and, for purposes of the indemnification and release provisions of the Plan, any entity that is currently, or ever was, a lender under any of the Pre-Petition Credit Agreements.

**"Pre-Petition Lender Claims"** means the Gross Pre-Petition Lender Claims exclusive of the Pre-Petition Lender LID Contribution and the Pre-Petition Lender Class 7J Claims; provided, however, that if the LID Acquisition Settlement Event occurs on or before the Effective Date, Pre-Petition Lender Claims shall mean the Gross Pre-Petition Lender Claims without any deduction.

**"Pre-Petition Lender Class 7J Claims"** means the unsecured claims of the Pre-Petition Lenders against The Vineyard at Lake Las Vegas, L.L.C., a Nevada limited liability company, one of the above-captioned debtors and debtors in possession.

**"Pre-Petition Lender LID Contribution"** means, collectively, (i) a portion of the Gross Pre-Petition Lender Claims in the amount of $50,000,000, (ii) all right, title and interest of the Pre-Petition Agent and the Pre-Petition Lenders to receive payments from the T-16 LID as a result of their valid, enforceable and properly perfected liens and security interests in the Debtors' T-16 Improvement Payment Rights, and (iii) the Pre-Petition Agent's and the Pre-Petition Lender's liens and security interests in the Debtors' T-16 Improvement Payment Rights.  The Pre-Petition Lender LID Contribution shall not alter, impair or diminish the distributions or the entitlements to distributions of the Pre-Petition Lenders under the Plan and shall not entitle the Falls Improvement

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA  90067-6049
TELEPHONE:  (310) 407-4000

16

the Class or Classes which share in the relevant consideration distributed to (y) the amount of all

Allowed Claims of the Class or Classes that will share in the relevant consideration distributed.

**"Pump Station Credit Agreement"** means the credit agreement pursuant to which Credit

Suisse or its designee will provide the Falls Improvement Trust with the Pump Station Loan.  A term

sheet describing the principal terms of the Pump Station Credit Agreement is attached as Exhibit Q

to the Plan.  A final form of the Pump Station Credit Agreement shall be Filed by the Credit

Agreement Filing Date and, upon such Filing, shall become Exhibit Q to the Plan.

**"Pump Station Loan"** means a loan of up to $5 million made by Credit Suisse or a designee

to the Falls Improvement Trust pursuant to the terms of the Pump Station Credit Agreement to

provide the Falls Improvement Trust with the funding necessary, as part of the Supplemental Pump

Station Financing, together with the $5 million to be lent by the Reorganized Debtors to the

Falls Improvement Trust, and in conjunction with the proceeds from the T-16 LID, to commence

and complete the construction of the Substitute P-40 Pump Station in accordance with the X-West

Approved Model if the Carmel Settlement Condition is not satisfied.

**"Rejection Damage Claim"** means a Claim arising under Bankruptcy Code section 365

from the rejection by any of the Debtors of a lease or contract.

**"Released Claims"** means any and all claims, obligations, demands, actions, suits, judgments,

causes of action, liabilities, costs, expenses and damages of any kind whatsoever (including those

arising under the Bankruptcy Code or nonbankruptcy law, and those that can be asserted by the

Debtors, their Estates or the Creditors' Committee), in law, equity or otherwise, whether known or

unknown, liquidated or unliquidated, foreseen or unforeseen, existing or hereafter arising, based in

whole or in part on any act, omission, transaction, event or other occurrence, in connection with,

relating to or arising from: (a) the Cases, the management or operation of the Debtors, the formulation

and pursuit of the Plan and the negotiation and documentation of the Exit Facility, (b)(i) the DIP

Facility, the Pre-Petition Credit Agreements and any other pre-petition credit agreements, lending,

financing or contractual arrangements related to any portion of the Community in which the

Pre-Petition Agent and the Debtors or any of their predecessors was or is a party, (ii) any transactions,

dividends, distributions, fees, reimbursements, payments, or refinancings contemplated by such credit

18

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

1   agreements or arrangements or related thereto, and (iii) the management or operation of the Debtors

2   prior to the Effective Date (including the period prior to the Petition Date), (c) any act, omission,

3   transaction, event or other occurrence taking place on or prior to the Effective Date (including the

4   period prior to the Petition Date) in any way relating to the Debtors, their predecessors or their

5   affiliates, or to the Cases, or (d) any claim or cause of action that was, or that could have been, raised

6   in the litigation filed by the Creditors' Committee against Credit Suisse individually and as agent for

7   the Pre-Petition Lenders in the United States Bankruptcy Court for the District of Nevada, Adversary

8   Proceeding No. 09-01198.  Released Claims shall not include any Insider Actions.

9       **"Remainder Segments"** means those segments of the T-16 LID that are not in X-East or in

10   X-West, as identified more particularly in <u>Exhibit 3</u> to the Disclosure Statement.

11       **"Remainder Segments Approved Model"** means the set of financial projections to

12   complete segments of the T-16 LID located in the Remainder Segments portion of the T-16 LID as

13   approved in writing by the Phase II Landowners owning land in, or adjacent to, the Remainder

14   Segments and the Reorganized Debtors.  Any Remainder Segments Approved Model shall include

15   an appropriate amount for the cost of outside bond counsel, engineering services, the City of

16   Henderson's engineering review, and a consultant retained by the board of advisors of the

17   <u>Falls</u> Improvement Trust to monitor issues related to the development of the Remainder Segments.

18   The Remainder Segments Approved Model may be modified from time to time so long as each

19   modified Remainder Segments Approved Model is approved in writing by the Phase II Landowners

20   owning land in, or adjacent to, Remainder Segments and the Reorganized Debtors.

21       **"Remainder Segments Conditions"** means (i) the agreement on a Remainder Segments

22   Approved Model which projects that the obligations of the Remainder Segments Loan (assuming all

23   interest is paid in kind) incurred to develop the Remainder Segments included within the Remainder

24   Segments Approved Model will be satisfied in cash in full upon completion of the Remainder

25   Segments provided for in the Remainder Segments Approved Model prior to the 60-month

26   cumulative maturity of the X-West Loan, the X-East Loan and the Remainder Segments Loan,

27   (ii) the Remainder Segments Approved Model projects that the available sources of funding after

28   repayment of the Remainder Segments Loan in full are sufficient to complete the Remainder

19

Deleted: 2

Deleted: T-16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Segments provided for in the Remainder Segments Approved Model, (iii) all outstanding obligations related to the X-West Loan (other than obligations arising under the Supplemental Pump Station Financing) have been satisfied in cash in full, (iv) the Phase II Landowner Settlement Condition is satisfied, and (v) no T-16 Improvement MAC Event has occurred.

"**Remainder Segments Loan**" means the term loan made to the Falls Improvement Trust, if the Remainder Segments Conditions are satisfied, pursuant to the Falls Improvement Trust Credit Agreement, in conjunction with the proceeds from the T-16 LID, to provide the Falls Improvement Trust with the funding necessary to commence and complete all construction within the Remainder Segments in accordance with the Remainder Segments Approved Model up to the maximum available commitment under the Falls Improvement Trust Credit Agreement (excluding the Supplemental Pump Station Financing).

"**Reorganized Debtors**" means the Debtors, as revested with all property of the Estates in accordance with the terms of the Plan, on the Effective Date.

"**Reorganized LLV Four Corners**" means LLV Four Corners, as revested with all property of its Estate in accordance with the terms of the Plan, on the Effective Date.

"**Reorganized LLV Holdco**" means LLV Holdco, LLC, a Delaware limited liability company, one of the above-captioned debtors and debtors in possession, as revested with all property of its Estate in accordance with the terms of the Plan, on the Effective Date.

"**Reorganized LLVJV**" means LLVJV, as revested with all property of its Estate in accordance with the terms of the Plan, on the Effective Date.

"**Reorganized LLV-1**" means LLV-1, as revested with all property of the LLV-1 Estate in accordance with the terms of the Plan, on the Effective Date.

"**Reorganized Vineyard**" means The Vineyard at Lake Las Vegas, L.L.C., a Nevada limited liability company, one of the above-captioned debtors and debtors in possession, as revested with all property of its Estate in accordance with the terms of the Plan, on the Effective Date.

"**Requisite DIP Lenders**" means "Requisite Lenders" as defined in the DIP Credit Agreement dated July 17, 2008 (as amended) governing the DIP Facility.

"**Requisite Pre-Petition Lenders**" means "Requisite Lenders" as defined in the Pre-Petition

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310)-407-4000

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

Mechanics' Lien Claim are not senior in priority to the liens and security interests that secure the Pre-Petition Lender Claims and the DIP Facility; or (ii) the assets securing such Allowed Mechanics' Lien Claim are not owned by one or more of the Debtors as of Effective Date.

**"Settlement"** means, collectively, the settlements and compromises provided for in the Phase II Landowner Settlement Agreement, T-16 Improvement Vendor Settlement Agreement and implicit in each of the terms of this Plan, between and among the Debtors, their Estates, the Creditors' Committee, the Phase II Landowners, the T-16 Improvement Vendors, Credit Suisse, the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders.  As part of the settlement implicit in the Plan, the Pre-Petition Lenders, who hold pre-petition claims in excess of $626,000,000 and additional substantial administrative priority adequate protection claims each of which is secured by liens on substantially all of the assets of the Debtors, and the DIP Lenders, who hold administrative priority claims and superpriority liens in the amount $127,000,000 secured by senior liens on substantially all of the assets of the Debtors, are receiving equity in the Reorganized Debtors and releases under the Plan in lieu of exercising remedies related to their liens and claims and at the same time providing for substantial financing for the continued operations of the Community, including funding the MPOA, providing both contributions and loans to the Falls Improvement Trust and the Creditor Trust for the benefit of unsecured creditors, funding a distribution for Class 7 creditors, the remapping of Phase II and providing the financing to develop the T-16 LID so that the Phase II Landowners can ultimately develop their projects and the T-16 Improvement Vendors can receive an approximately 40% distribution on their Claims regardless of whether they have liens on Estate assets or third party assets (such as the Phase II Landowners' properties).

**"Substitute P-40 Pump Station"** means a pump station in lieu of the P-40 Pump Station within the T-16 LID that complies with the applicable specifications of the T-16 LID.

**"Supplemental Pump Station Financing"** means up to an additional $10 million in funding for the purpose of constructing the Substitute P-40 Pump Station in accordance with the X-West Approved Model if the Phase II Landowner Settlement Condition is satisfied and the Carmel Settlement Condition is not satisfied, of which $5 million will be advanced to the Falls Improvement Trust by the Reorganized Debtors pursuant to the X-West Supplemental Loan and $5 million will be

**Deleted:** T-16

**Deleted:** T-16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA  90067-6049
TELEPHONE:  (310) 407-4000

lent directly by Credit Suisse or its designee to the <u>Falls</u> Improvement Trust pursuant to the terms of the Pump Station Loan.

**"T-12 Improvement Payment Rights"** means all right, title and interest to receive from the T-12 LID Bond Trustee the purchase price of segments of the T-12 LID, subject to any and all valid, enforceable and properly perfected liens or security interests in such right, title and interest.

**"T-12 LID**" means the City of Henderson, Nevada, Local Improvement District No. T-12 (Lake Las Vegas North Shore).

**"T-12 LID Acquisition Agreement"** means that certain Acquisition Agreement by and between the City of Henderson, Nevada and Lake at Las Vegas Joint Venture, a Nevada general partnership, dated as of May 1, 1998.

**"T-12 LID Bond Trustee"** means the trustee under the indenture pursuant to which the bonds relating to the T-12 LID were issued, including all successors and assigns, as set forth or designated in the T-12 LID Acquisition Agreement.

**"T-16 Improvement MAC Event"** means that either (i) the T-16 LID Bond Trustee has transferred the remaining amounts allocated to fund acquisitions under the T-16 LID Acquisition Agreement for the purpose of redeeming a portion of the T-16 LID Bonds such that the funds constituting the T-16 Improvement Payment Rights are not available to the Reorganized Debtors, LLV LID Loan Holder or the <u>Falls</u> Improvement Trust and the T-16 LID Bond Trustee has notified the Reorganized Debtors or the <u>Falls</u> Improvement Trust of that event, or (ii) the <u>Falls</u> Improvement Trustee has determined in the exercise of his or her fiduciary duty, and notified the Reorganized Debtors in writing, that there is no reasonable likelihood of successfully establishing that the T-16 Improvement Payment Rights may be received and used by the <u>Falls</u> Improvement Trust through its senior lien or other interest in the T-16 Improvement Payment Rights irrespective of other liens on the T-16 Improvement Payment Rights, including those asserted by LID Acquisition; <u>provided</u>, <u>however</u>, that neither of such occurrences shall be a T-16 Improvement MAC Event if it was caused by (x) the acts or failures to act by any Phase II Landowner (or any affiliate thereof, or, in the case of Carmel, the certain designated related entities referred to in the definition of "Carmel Settlement Condition") taken, or avoided being taken, with the intent or for the purpose of causing

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

24

what would otherwise be a T-16 Improvement MAC Event or (y) the failure by any Phase II Landowner to timely pay its assessments in respect of the T-16 LID or its property taxes.

**"T-16 Improvement MAC Payments"** means the Reorganized Debtors' and Credit Suisse's or its designee's funding from the Falls Improvement Trust Credit Agreement and the Pump Station Credit Agreement to the Falls Improvement Trust in the event of a T-16 Improvement MAC Event of $8 million less (i) the aggregate of all amounts distributed to holders of Class 9 Claims pursuant to the Plan, but excluding, as applicable, any distributions on account of the Class 9 Net Litigation Proceeds Share, and (ii) (x) the aggregate of all amounts advanced to the Falls Improvement Trust pursuant to the Falls Improvement Trust Credit Agreement and the Pump Station Credit Agreement less (y) the aggregate of all payments made to holders of Allowed Class 9 Claims pursuant to clause (A)(x) of Section II.C.9.

**"T-16 Improvement Payment Rights"** means all right, title and interest to receive from the T-16 LID Bond Trustee the purchase price of segments of the T-16 LID, subject to any and all valid, enforceable and properly perfected liens or security interests in such right, title and interest.

**"T-16 Improvement Project Manager"** means the entity that shall provide services to and for the benefit of the Falls Improvement Trust in overseeing and managing the completion of the X-West Approved Model, the X-East Approved Model and the Remainder Segments Approved Model.  Reorganized LLV-1 shall be the initial T-16 Project Manager.

**"T-16 Improvement-Related Claim"** means a Claim for the provision of goods and services to, or for the benefit of, one or more of the Debtors prior to the Petition Date to the extent such goods and services were for the purpose of a T-16 LID construction project.

**"T-16 Improvement Vendor"** means the entities listed in Exhibit 9 to the Disclosure Statement, as it may be amended prior to the Ballot Deadline in the Debtors' sole discretion.  The T-16 Improvement Vendor Claims of the T-16 Improvement Vendors making the T-16 Improvement Vendor Claims Election will be Allowed T-16 Improvement Vendor Claims in the amounts set forth in the respective T-16 Improvement Vendor Settlement Agreements.  An entity is a T-16 Improvement Vendor only with respect to its T-16 Improvement-Related Claim.  To the extent it has other claims or rights, those other claims or rights are subject to the treatment described in

25

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

the Plan applicable to such other claims or rights.

"**T-16 Improvement Vendor Claims**" mean the T-16 Improvement-Related Claims of T-16 Improvement Vendors that have timely made the T-16 Improvement Vendor Claims Election.

"**T-16 Improvement Vendor Claims Election**" means the timely election by a T-16 Improvement Vendor to have its Claim classified as a T-16 Improvement Vendor Claim.

<u>How to Make the T-16 Improvement Vendor Claims Election</u>. A T-16 Improvement Vendor that has entered into the T-16 Improvement Vendor Settlement Agreement no later than May 12, 2010 shall be deemed to have made the T-16 Improvement Vendor Claims Election, and no further or other action by such entity shall be required.

<u>Other Terms and Conditions of the T-16 Improvement Vendor Claims Election</u>. By making the T-16 Improvement Vendor Claims Election, a holder of a T-16 Improvement Vendor Claim releases and forever discharges the T-16 Improvement Vendor Released Persons from all Released Claims that relate in any way to a T-16 Improvement-Related Claim or any other Claim arising out of the provision of goods or services to or for the benefit of the T-16 LID (excepting only such claims and obligations arising solely out of the Plan or as are expressly preserved by the Plan). To that end, with respect to the foregoing Released Claims, a holder of a T-16 Improvement Vendor Claim expressly waives and relinquishes any and all provisions, rights and benefits conferred by section 1542 of the California Civil Code, which provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Further, with respect to the foregoing Released Claims, a holder of a T-16 Improvement Vendor Claim expressly waives and relinquishes, to the fullest extent permitted by law, the provisions, rights and benefits of any law of the United States or of any state or territory of the United States or any other applicable jurisdiction (including any such provision of Nevada or New York law), or any principle of common law or equity which is similar, comparable or equivalent to section 1542 of the California Civil Code. In addition to the foregoing, by making the T-16 Improvement Vendor Claims Election, a holder of a T-16 Improvement Vendor Claim releases or, at the request of the Reorganized Debtors, assigns to the Reorganized Debtors any and all liens or

**Deleted:** April 9

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

**"Unsecured Beneficiaries Net Litigation Proceeds Share"** means 20% of the Net Litigation Proceeds.

**"U.S. Trustee"** means the Office of the United States Trustee for the District of Nevada.

**"U.S. Trustee Fees"** means fees or charges assessed against the Estates pursuant to 28 U.S.C. § 1930.

**"X-East"** means those segments of the T-16 LID that are not in X-West or the Remainder Segments, as identified more particularly in Exhibit 3 to the Disclosure Statement.

**"X-East Approved Model"** means the set of financial projections to complete segments of the T-16 LID located in the X-East portion of the T-16 LID approved in writing by the Phase II Landowners owning land in, or adjacent to, X-East and the Reorganized Debtors.  Any X-East Approved Model shall include an appropriate amount for the cost of outside bond counsel, engineering services, the City of Henderson's engineering review, and a consultant retained by the board of advisors of the Falls Improvement Trust to monitor issues related to the development of the X-East segments of the T-16 LID.  The X-East Approved Model may be modified from time to time so long as each modified X-East Approved Model is approved in writing by board of advisors of the Falls Improvement Trust and the Phase II Landowners owning land in, or adjacent to, X-East and the Reorganized Debtors.

**"X-East Conditions"** means (i) the agreement on an X-East Approved Model which projects that the obligations of the X-East Loan (assuming all interest is paid in kind) incurred to develop the X-East segments included within the X-East Approved Model will be satisfied in cash in full upon completion of the X-East segments provided for in the X-East Approved Model prior to the 60-month cumulative maturity of the X-West Loan and the X-East Loan, (ii) the X-East Approved Model projects that the available sources of funding after repayment of the X-East Loan in full are sufficient to complete the X-East segments provided for in the X-East Approved Model, (iii) all outstanding obligations related to the X-West Loan (other than obligations arising under the Supplemental Pump Station Financing) have been satisfied in cash in full, (iv) the Phase II Landowner Settlement Condition has been satisfied, and (v) no T-16 Improvement MAC Event has occurred.

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Deleted: 2

Deleted: T-16

Deleted: T-16

"X-East Loan" means the term loan made to the Falls Improvement Trust, if the X-East Conditions are satisfied, pursuant to the Falls Improvement Trust Credit Agreement, in conjunction with the proceeds from the T-16 LID, to provide the Falls Improvement Trust with the funding necessary to commence and complete all construction within X-East in accordance with the X-East Approved Model up to the maximum available commitment under the Falls Improvement Trust Credit Agreement (excluding the Supplemental Pump Station Financing).

"X-West" means those segments of the T-16 LID that are not in X-East or the Remainder Segments, as identified more particularly in Exhibit 3 to the Disclosure Statement.

"X-West Approved Model" means the set of financial projections to complete the segments of the T-16 LID located in the X-West portion of Phase II, approved in writing by the Falls Improvement Trustee, the Reorganized Debtors and, to the extent the projections are applicable to the Substitute P-40 Pump Station, Credit Suisse or its designee. Any X-West Approved Model shall include an appropriate amount for the cost of outside bond counsel, engineering services, the City of Henderson's engineering review, and a consultant retained by the board of advisors of the Falls Improvement Trust to monitor issues related to the development of the X-West segments of the T-16 LID. The X-West Approved Model may be modified from time to time after the Effective Date so long as each modified X-West Approved Model is approved in writing by the board of advisors for the Falls Improvement Trust, the Falls Improvement Trustee, the Reorganized Debtors and, to the extent applicable to the Substitute P-40 Pump Station, Credit Suisse or its designee. The X-West Approved Model shall make provision for the construction of the Substitute P-40 Pump Station on land owned by the Reorganized Debtors if the Carmel Settlement Condition is not satisfied. A substantially final form of the X-West Approved Model that will apply if the Carmel Settlement Condition is not satisfied is attached as Exhibit N to the Plan. Any revisions or amendments thereto shall be filed by the Exhibit Filing Date and, upon such Filing, shall thereupon become Exhibit N to the Plan.

"X-West Loan" means the term loan, exclusive of the X-West Supplemental Loan, if the Phase II Landowner Settlement Condition is satisfied, made to the Falls Improvement Trust pursuant to the Falls Improvement Trust Credit Agreement, in conjunction with the proceeds from the T-16 LID, to provide the Falls Improvement Trust with the funding necessary to commence and

29

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California, 90067-6049
Telephone: (310) 407-4000

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: 2
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

complete all construction within X-West in accordance with the X-West Approved Model up to the maximum available commitment under the Falls Improvement Trust Credit Agreement (excluding the Supplemental Pump Station Financing).

**Deleted:** T-16

"**X-West Supplemental Loan**" means up to $5 million of the $10 million in Supplemental Pump Station Financing for the purpose of constructing the Substitute P-40 Pump Station in accordance with the X-West Approved Model if the Carmel Settlement Condition is not satisfied and the Phase II Landowner Settlement Condition is satisfied, to be advanced by the Reorganized Debtors to the Falls Improvement Trust.

**Deleted:** T-16

**B.    Rules of Construction.**

1.    The rules of construction in Bankruptcy Code section 102 apply to the Plan to the extent not inconsistent herewith.

2.    Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.    A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

4.    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement.

5.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially adversely affected.

7.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.    Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

9.    Unless otherwise specified, all references to Sections or Exhibits are references to the Plan's Sections or Exhibits.

30

d.    Maturity Date:  December 31, 2012.

e.    Prepayment Penalty:  None.

f.    Security:  The note shall be secured by the same collateral that secured the Allowed Class 3A Claims prior to the Effective Date.

g.    Non-Recourse:  The note shall be non-recourse to Reorganized LLVJV, and the holders shall have recourse only against the collateral.

**b.    Class 3B**

**Impairment:**    ☐ Impaired    ☒ Unimpaired

**Voting Rights:**  Class 3B is entitled to vote on the Plan.

**Treatment:**  Class 3B Claims consist of Claims held by Gamma 4C LLC on the Effective Date that are secured by certain real property owned by a limited liability company in which LLV Four Corners holds a membership interest.  The treatment of the Class 3B Claims shall be set forth in that certain *Stipulated Adequate Protection Order Concerning Deeds of Trust Held by Gamma4C Against Real Property Commonly Known as 1600 Lake Las Vegas Pkwy* [Docket No. 2341], by and between Gamma 4C LLC and LLVJV, which is incorporated by reference as if set forth fully herein.

**4.    Class 4 (Senior Mechanics' Lien Claims)**

**Classification:**  Class 4 (and each subclass of Class 4) consists of the following asserted Senior Mechanics' Lien Claims held by the below-named creditor against the applicable Debtor, as set forth in the chart below:

| Plan Subclass | Creditor/Claimant | Debtor Against Which Senior Mechanics' Lien Claim Is Asserted |
|---|---|---|
| 4A | Bombard Electric, LLC | Lake at Las Vegas Joint Venture, LLC |
| 4B | Commercial Roofers, Inc. | Lake at Las Vegas Joint Venture, LLC |
| 4C | Consolidated Mechanical Contractors | Lake at Las Vegas Joint Venture, LLC |
| 4D | Culinary Staffing Service of Las Vegas, LLC | Lake at Las Vegas Joint Venture, LLC |
| 4E | Dynamic Plumbing | Lake at Las Vegas Joint Venture, LLC |
| 4F | Hart Howerton, Inc. | Lake at Las Vegas Joint Venture, LLC |

37

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: , dated March __, 2010, and Filed ____, 2010

Deleted: ___

The legal, equitable, and contractual rights of holders of Priority Claims are unaltered by the Plan. Unless such holder agrees to other treatment, on or as soon as reasonably practicable after the Effective Date, a holder of a Priority Claim shall receive, in full satisfaction of its Priority Claim, cash in the full amount of such Priority Claim on or before the latest of: (a) ten (10) days after the Effective Date; (b) ten (10) days after the date on which such Priority Claim becomes an Allowed Claim; and (c) the date on which such Priority Claim first becomes due and payable in accordance with its terms. To the extent that a Priority Claim is not paid on the Effective Date, if otherwise due and payable in accordance with its terms on or prior to such date, then the Priority Claim will accrue interest at the federal judgment interest rate from the Effective Date through the date of payment of such Priority Claim, which interest shall be paid at the time the Priority Claim is paid.

**7.    Class 7 (General Unsecured Claims)**

**Classification**:   Class 7 (and each subclass of Class 7) consists of General Unsecured Claims (including, as to Class 7J, the Pre-Petition Lender Class 7J Claims, but not including, as to all subclasses of Class 7, Phase II Landowner Claims, T-16 Improvement Vendor Claims or the deficiency Claims of the Pre-Petition Lenders) asserted against the applicable Debtor on the chart below. The Plan provides for the benefits of the Settlement for Class 7 and provides also that each subclass of Class 7 that votes to accept the Plan thereby consents to the substantive consolidation of the Estates in accordance with the terms of Section IV.A of the Plan.

| Plan Subclass | Debtor Against Which General Unsecured Claim Is Asserted |
|---------------|----------------------------------------------------------|
| 7A | Lake at Las Vegas Joint Venture, LLC |
| 7B | LLV-1, LLC |
| 7C | LLV Holdco, LLC |
| 7D | Lake Las Vegas Properties, L.L.C. |
| 7E | LLV Four Corners, LLC |
| 7F | NorthShore Golf Club, L.L.C. |
| 7G | P-3 at MonteLago Village, LLC |
| 7H | The Golf Club at Lake Las Vegas, LLC |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

| 7I | Marina Investors, L.L.C. |
|---|---|
| 7J | The Vineyard at Lake Las Vegas, L.L.C. |
| 7K | LLV VHI, L.L.C. |
| 7L | TCH Development, L.L.C. |
| 7M | TC Technologies, L.L.C. |
| 7N | SouthShore Golf Club, L.L.C. |
| 7O | Neva Holdings, L.L.C. |

**Impairment:**  ☒ Impaired    ☐ Unimpaired

**Voting Rights:**  Classes 7A - 7O are entitled to vote on the Plan.

**Treatment:**  For each of Classes 7A - 7O that accepts the Plan, holders of Allowed Claims in the accepting Class will each receive their Pro Rata share of (i) the $1,000,000 contributed to the Creditor Trust for the benefit of holders of Class 7 Claims; and (ii) the Class 7 Net Litigation Proceeds Share; <u>provided</u>, <u>however</u>, that if such a holder of a claim in Class 7A, 7B or 7J is entitled to make a Phase II Landowner Claims Election or a T-16 Improvement Vendor Claims Election, and such holder timely makes such election, then such holder shall be deemed to have accepted the Plan and to hold, as applicable, a Claim in Class 8 (if the Phase II Landowner Claims Election was made) or a Claim in Class 9 (if the T-16 Improvement Vendor Claims Election was made); and, provided, further, that, pursuant to the Settlement, any distribution to the Pre-Petition Lenders on account of their Pre-Petition Lender Class 7J Claims shall be distributed Pro Rata to all other holders of General Unsecured Claims.  For each of Classes 7A - 7O that rejects the Plan, holders of Allowed Claims a rejecting Class will receive the Alternative Claim Treatment, and the Alternative Claim Treatment shall not be calculated on a substantively consolidated basis.

**8.    Class 8 (Phase II Landowner Claims)**

**Classification:**  Class 8 consists of Claims of the Phase II Landowners that have timely made the Phase II Landowner Claims Election.

**Impairment:**  ☐ Impaired    ☒ Unimpaired

**Voting Rights:**  By virtue of making the Phase II Landowner Claims Election, a holder of a Class 8

42

Claim is deemed to accept the Plan.

**Treatment:**  Holders of Allowed Claims in Class 8 will receive and retain no value under the Plan and shall not receive payment of any consideration, other than (i) such benefits as are provided by the Phase II Landowner Settlement Agreement, including, but not limited to, adjustment of the lot lines; (ii) benefits as third-party beneficiaries from the build-out of the Falls Improvement Trust; and (iii) their Pro Rata share of the Class 8 Net Litigation Proceeds Share.

**9.    Class 9 (T-16 Improvement Vendor Claims)**

**Classification:**  Class 9 consists of Claims of the T-16 Improvement Vendors that have timely made the T-16 Improvement Vendor Claims Election:

**Impairment:**    ☐    Impaired      ☒    Unimpaired

**Voting Rights:**  By virtue of making the T-16 Improvement Vendor Claims Election, a holder of a Class 9 Claim is deemed to accept the Plan.

**Treatment:**  The Claims in Class 9 are deemed Allowed for purposes of their treatment as T-16 Improvement Vendor Claims in the amounts set forth in their T-16 LID Improvement Vendor Settlement Agreements.  Each Holder of an Allowed Claim in Class 9 will receive:

(a)    its Pro Rata share of the Class 9 Net Litigation Proceeds Share, and

(b)    (i)    40% of the amounts owed to it, as specifically set forth in its T-16 LID Improvement Vendor Settlement Agreement, on account of goods or services provided to the Debtors with respect to the T-16 LID prior to the Petition Date with respect to which the Falls Improvement Trust is entitled to receive payments, and

(ii)    10% of the amounts owed to it, as specifically set forth in its T-16 LID Improvement Vendor Settlement Agreement, on account of goods or services provided to the Debtors with respect to the T-16 LID prior to the Petition Date with respect to which the Falls Improvement Trust is not entitled to receive payments.

Payment pursuant to subsection (b) will be made as follows:

(A)    If no T-16 Improvement MAC Event has then occurred, payments shall be made to holders of Class 9 Claims by the Falls Improvement Trust within thirty (30) days of receipt by the Falls Improvement Trust of cash payments under the T-16 LID Acquisition

43

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16

Deleted: specifically

Deleted: Exhibit 9 to the Disclosure Statement

Deleted: Exhibit 9 to the Disclosure Statement

Deleted: T-16

Deleted: Exhibit 9 to the Disclosure Statement

Deleted: T-16

Deleted: T-16

Deleted: T-16

Agreement for the T-16 LID segment to which such holder's T-16 Improvement Vendor Claim relates; *provided*, *however*, that (x) if the Carmel Settlement Condition is not satisfied, then the distribution on account of the T-16 Improvement Vendor Claims in respect of the P-40 Pump Station will be paid within thirty (30) days after the last day to satisfy the Carmel Settlement Condition; and (y) T-16 Improvement Vendor Claims in respect of works of improvement in X-East or the Remainder Segments shall be paid within thirty (30) days after completion of X-West pursuant to the X-West Approved Model unless there is, at that time, an X-East Approved Model or a Remainder Segments Model, as applicable.

(B)    If a T-16 Improvement MAC Event has occurred, the Plan distributions on account of Allowed Class 9 Claims (excluding the Class 9 Net Litigation Proceeds Share) not theretofore made shall be made by the Falls Improvement Trust within thirty (30) days after the T-16 Improvement MAC Payment is received by the Falls Improvement Trust.

**10.    Class 10 (Interests)**

**Classification**: Class 10 (and each subclass of Class 10) consists of Interests asserted against the applicable Debtor on the chart below:

| Plan Subclass | Debtor Against Which Interest Is Asserted |
|---|---|
| 10A | Lake at Las Vegas Joint Venture, LLC |
| 10B | LLV-1, LLC |
| 10C | LLV Holdco, LLC |
| 10D | Lake Las Vegas Properties, L.L.C. |
| 10E | LLV Four Corners, LLC |
| 10F | NorthShore Golf Club, L.L.C. |
| 10G | P-3 at MonteLago Village, LLC |
| 10H | The Golf Club at Lake Las Vegas, LLC |
| 10I | Marina Investors, L.L.C. |
| 10J | The Vineyard at Lake Las Vegas, L.L.C. |
| 10K | LLV VHI, L.L.C. |
| 10L | TCH Development, L.L.C. |

44

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

1  aggregate distributions to holders of Class 7 Claims, Class 8 Claims and Class 9 Claims are referred

2  to as, respectively, the "Class 7 Net Litigation Proceeds Share," the "Class 8 Net Litigation Proceeds

3  Share," and the "Class 9 Net Litigation Proceeds Share".

4        **6.**      **The Termination of the Creditor Trust.**

5        The Creditor Trust shall be irrevocable.  The Creditor Trust shall terminate when the Creditor

6  Trustee has performed all of its duties under the Plan and the Creditor Trust Agreement, including

7  the final distribution of all the property of the Creditor Trust in respect of holders of beneficial

8  interests in the Creditor Trust, which date shall not be more than five (5) years and one (1) month

9  after the Effective Date; provided, however, the Court may, upon good cause shown, order the

10  Creditor Trust to remain open so long as shall be necessary to prosecute the Avoidance Actions and

11  Insider Actions and liquidate and distribute all its property.  The Court shall retain jurisdiction to

12  interpret and enforce the terms of the Creditor Trust.

13        **7.**      **Additional Provisions of the Creditor Trust Agreement.**

14        In addition to the provisions in the Plan with respect to the Creditor Trust, the Creditor Trust

15  Agreement will provide for, among other things, other actions to be taken by the Creditor Trust and

16  the Creditor Trustee, the removal of the Creditor Trustee or appointment of successor Creditor

17  Trustees, the circumstances under which the Creditor Trustee, in its capacity as such, will be liable

18  for a action or inaction, the effect of actions by the Creditor Trustee, and the indemnification of the

19  Creditor Trustee.  The Creditor Trust Agreement shall also contain language consistent with IRS

20  Revenue Procedure 94-95 establishing that the Creditor Trust is a liquidating trust.  To the extent not

21  set forth in the Plan, the functions and procedures applicable to the Creditor Trust, the powers and

22  duties of the Creditor Trustee, and the rights of the holders of beneficial interests in the Creditor

23  Trust shall be governed by the provisions of the Creditor Trust Agreement.

24        **E.**      **Creation of the Falls Improvement Trust and Appointment of the**

25        **Falls Improvement Trustee.**

26        The Confirmation Order shall approve, effective on the Effective Date if the Phase II

27  Landowner Settlement Condition has been satisfied, the Falls Improvement Trust Agreement,

28  the establishment of the Falls Improvement Trust and the appointment of the Falls Improvement

54

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

Trustee.  The Falls Improvement Trust will be organized for the primary purpose of liquidating and distributing assets transferred to it, including taking all necessary action to obtain payment on account of the T-16 Improvement Payment Rights and jointly prosecuting the LID Acquisition Litigation with the Reorganized Debtors and LLV LID Loan Holder.  The activities of the Falls Improvement Trust shall be reasonably necessary to, and consistent with, accomplishing that purpose.  The Falls Improvement Trust's liquidation of the assets transferred to it shall not be unreasonably prolonged and its liquidating purpose shall not become so obscured by business activities that its declared purpose of liquidation is lost or abandoned.  The Falls Improvement Trust will have no objective to continue or engage in the conduct of trade or business, except to the extent reasonably necessary to, or consistent with, its liquidating purpose.

### 1.    Management of the Falls Improvement Trust.

The Falls Improvement Trust Agreement shall provide for the appointment of one (1) person to act as the Falls Improvement Trustee to administer the Falls Improvement Trust. The Falls Improvement Trustee, and any successor, shall be a person not affiliated with the Reorganized Debtors, Debtors, Atalon, or persons affiliated or associated with any entity listed on Exhibit I.  Any successor Falls Improvement Trustee will be selected by the Reorganized Debtors until the obligations under the Falls Improvement Trust Credit Agreement have been satisfied in full. Thereafter, the Reorganized Debtors and the Phase II Landowners with land adjacent to the remaining uncompleted T-16 LID segments in the applicable approved model shall select the successor and all subsequent Falls Improvement Trustees for successive one (1) year terms, subject to earlier death, resignation, incapacity or removal as specifically provided in the Falls Improvement Trust Agreement.  The Falls Improvement Trustee shall serve without any bond and shall act in accordance with the Falls Improvement Trust Agreement and the Plan.  The Falls Improvement Trustee shall be entitled to receive, on a monthly basis, payment of reasonable fees and reimbursement of reasonable expenses, without further Court approval, from the assets of the Falls Improvement Trust, in accordance with the Falls Improvement Trust Agreement.

There also will be a board of advisors for the Falls Improvement Trust, which will consist of two (2) representatives of the Reorganized Debtors, two (2) representatives of Phase II Landowners

55

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

that own real property in X-West, and one (1) representative of the T-16 Improvement Vendors. Upon completion of the X-West segments of the T-16 LID and the satisfaction of the obligations under the X-West Loan (other than the Supplemental Pump Station Financing) in full, and the completion of the Remainder Segments, the board of advisors for the Falls Improvement Trust will consist of one (1) representative of the Reorganized Debtors, and one (1) representative of Phase II Landowners that own real property in X-East.  Among other things, the board of advisors may (i) explore alternative means of developing the X-West and X-East segments of the T-16 LID consistent with the X-West Approved Model and proposed X-East Approved Model, including contracting with one or more general contractors to perform substantially all of the work related to such projects; and (ii) retain a consultant to monitor issues related to the development of the T-16 LID.  The Falls Improvement Trust may also consider and implement the construction or completion of the Remainder Segments pursuant to the Remainder Segments Approved Model provided it determines, as to any segment within the Remainder Segments, that there will be no net cost to such construction, and the construction may be completed without impairing the timing or completion of any segment in X-West.

The initial Falls Improvement Trustee and the board of advisors of the Falls Improvement Trust are identified on Exhibit L to the Plan.  Any changes to Exhibit L shall be Filed by the Exhibit Filing Date and, upon such Filing, shall become Exhibit L to the Plan.

### 2. Funding of the Falls Improvement Trust.

The Falls Improvement Trust will be funded on or as soon as reasonably practicable following the Effective Date with the Falls Improvement Trust Assets.  If the T-16 LID Bond Trustee, under the terms of the T-16 LID Acquisition Agreement or otherwise, declines to make payment to the Falls Improvement Trust and instead makes payment to Reorganized LLV-1, then Reorganized LLV-1 shall accept payment from the T-16 LID Bond Trustee, shall deposit the funds received from the T-16 LID Bond Trustee into an account designated by the Falls Improvement Trustee, and shall irrevocably contribute those funds to the Falls Improvement Trust.

For federal income tax purposes, a transfer of assets to the Falls Improvement Trust for the benefit of holders of Allowed Claims is treated as a transfer of assets to such holders to the extent

56

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

that such holders are beneficiaries of the Falls Improvement Trust. The transfer will be treated as a deemed transfer to such holders followed by a deemed transfer by such holders to the Falls Improvement Trust. Such holders will be treated as the grantors and deemed owners of the Falls Improvement Trust. The Reorganized Debtors and Creditor Trustee shall jointly determine the valuations of the transferred property by the Falls Improvement Trustee. Such valuations shall be binding on the beneficiaries of the Falls Improvement Trust, and must be used for all federal income tax purposes.

### 3.    The T-16 Improvement Project Manager.

The initial T-16 Improvement Project Manager shall be Reorganized LLV-1. Reorganized LLV-1, to the extent it is the T-16 Improvement Project Manager, shall provide a reasonable number of personnel to fulfill its obligations as T-16 Improvement Project Manager. As T-16 Improvement Project Manager, Reorganized LLV-1 shall be responsible for the incidental cost of such personnel such as office space and administrative support reasonably appropriate for managing the T-16 LID, including managing bidding, contracting, project oversight, and the submission of appropriate applications to the City of Henderson to tender completed T-16 LID-related X-West, X-East and Remainder Segments to the City of Henderson and receiving payment therefor from the T-16 LID Bond Trustee. The Falls Improvement Trustee may terminate the T-16 Improvement Project Manager for cause or if the Falls Improvement Trustee concludes in good faith that it will not be possible for the X-West Approved Model to be completed in accordance with its terms due to the T-16 Improvement Project Manager's negligence. Any replacement T-16 Improvement Project Manager shall be subject to the reasonable approval of the lender under the Falls Improvement Trust Credit Agreement so long as the obligations thereunder are outstanding.

### 4.    The Pre-Petition Lender LID Contribution.

If the LID Acquisition Settlement Event has not occurred on or before the Effective Date, then on or as soon as reasonably practicable after the Effective Date, the Pre-Petition Agent and the Pre-Petition Lenders shall assign all their right, title and interest in the Pre-Petition Lender LID Contribution to LLV LID Loan Holder. LLV LID Loan Holder shall hold and be entitled to enforce all rights and remedies in respect of the Pre-Petition Lender LID Contribution and shall be entitled to

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

be a party in the LID Acquisition Litigation; provided that it shall contribute any proceeds actually received to the Falls Improvement Trust.  LLV LID Loan Holder shall not be entitled to share in any distribution made to Class 1 under the Plan or to share in any other benefits or rights granted under the Plan to the holders of Pre-Petition Lender Claims.

**5.    Powers and Duties.**

The Falls Improvement Trust shall initially pursue the development of the X-West segments of the T-16 LID in accordance with the X-West Approved Model, including, if applicable, constructing the Substitute P-40 Pump Station.  To facilitate this, the Falls Improvement Trust may borrow funds under the X-West Loan and the Supplemental Pump Station Financing for the purposes specified therein.  After repayment in full of all obligations under the X-West Loan (excluding any portion attributable to the Supplemental Pump Station Financing) and the satisfaction of the other X-East Conditions, the Falls Improvement Trust may pursue the development of the Remainder Segments and/or the X-East segments of the T-16 LID in accordance with the Remainder Segments Approved Model and the X-East Approved Model, and may borrow funds under the Remainder Segments Loan and the X-East Loan, as applicable, to pursue the development of the Remainder Segments and X-East, respectively.

Consistent with the foregoing, the Falls Improvement Trust shall have the following rights, powers and duties:

a.    hold all of the Falls Improvement Trust Assets: the Falls Improvement Trust shall have full right, power and discretion to manage such property and execute, acknowledge and deliver any and all instruments as may be appropriate or necessary, as determined by the Falls Improvement Trust in its discretion;

b.    retain the services of third-party contractors, under terms and conditions which shall be at the sole discretion of the Falls Improvement Trustee and the T-16 Improvement Project Manager , to complete any and all work necessary to obtain payment from the T-16 LID Bond Trustee on account of the T-16 Improvement Payment Rights; provided, however, that the Falls Improvement Trustee shall be required to allow the City of Henderson and the T-16 LID Bond Trustee to pay for the post-Effective Date services of third-party contractors, as reasonably

58

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

Deleted: T-16

necessary;

c.    initiate borrowings under, and make repayments of, the X-West Loan, the Supplemental Pump Station Financing, the Remainder Segments Loan, and the X-East Loan for the purposes, and under the conditions specified therein;

d.    make interim and final distributions of the Net T-16 Improvement Payment Proceeds to the holders of T-16 Improvement Vendor Claims pursuant to the terms of the Plan;

e.    make distributions of the remaining Net T-16 Improvement Payment Proceeds, after payment in full of all T-16 Improvement Vendor Claims under the Plan, to Reorganized LLV-1 as reimbursement for the unreimbursed payments LLV-1 made on account of the T-16 LID prior to the Petition Date;

f.    administer the collection from the T-16 LID, the T-16 LID Bond Trustee, and the City of Henderson on account of the T-16 Improvement Payment Rights and, if necessary, prosecute, settle, or abandon claims arising out of, or relating to, the T-16 Improvement Payment Rights;

g.    jointly prosecute the LID Acquisition Litigation with the Reorganized Debtors and LLV LID Loan Holder;

h.    file all tax and regulatory forms, returns, reports and other documents required with respect to the Falls Improvement Trust; and

i.    file suit or any appropriate motion for relief in the Court or in any other court of competent jurisdiction to resolve any claim, disagreement, conflict or ambiguity in connection with the exercise of its rights, powers or duties.

In connection with the above, the Falls Improvement Trust and the Falls Improvement Trustee shall, from the Effective Date, be a representative of the Estates, pursuant to Bankruptcy Code section 1123, appointed for the purposes of, among other things, pursuing with the Reorganized Debtors and LLV LID Loan Holder the LID Acquisition Litigation.  In furtherance of that objective, the Falls Improvement Trustee shall have the rights of a trustee under Bankruptcy Code section 1106 as it relates to the LID Acquisition Litigation. The Falls Improvement Trust shall have the full power and authority, either in its name or in the Creditors' Committee's name, to

59

prosecute with the Reorganized Debtors and LLV LID Loan Holder the LID Acquisition Litigation, subject to the approval rights of the board of advisors set forth in the Falls Improvement Trust Agreement. The Falls Improvement Trust shall be authorized to retain professionals (which professionals need not be "disinterested" and may include existing legal counsel and other professionals retained by the Debtors, the Reorganized Debtors or the Creditors' Committee) without Court approval and with reasonable professional fees, expenses and costs to be paid out of the assets of the Falls Improvement Trust.

### 6.   The T-16 Improvement MAC Payments.

If the Falls Improvement Trust receives the T-16 Improvement MAC Payment, then such funds shall be used solely for the following purposes and in the following order of priority: first, to fund any remaining Plan distributions to holders of Allowed Class 9 Claims (other than distributions on account of the Class 9 Net Litigation Proceeds Share); second, to fund the construction of the Substitute P-40 Pump Station; and, third, to fund the completion of segments identified within the T-16 LID.

### 7.   The Termination of the Falls Improvement Trust.

The Falls Improvement Trust shall be irrevocable. The Falls Improvement Trust shall terminate when the Falls Improvement Trustee has performed all of its duties under the Plan and the Falls Improvement Trust Agreement, including the final distribution of all the property of the Falls Improvement Trust in respect of holders of beneficial interests in the Falls Improvement Trust, which date shall not be more than five (5) years and one (1) month after the Effective Date; provided, however, the Court may, upon good cause shown, order the Falls Improvement Trust to remain open so long as shall be necessary to develop the T-16 LID pursuant to the X-West Approved Model, the X-East Approved Model, and the Remainder Segments Approved Model, as applicable, to complete segments within the T-16 LID, if there is a T-16 Improvement MAC Event, and to liquidate and distribute all its property. The Court shall retain jurisdiction to interpret and to enforce the terms of the Falls Improvement Trust.

### 8.   Additional Provisions of the Falls Improvement Trust Agreement.

In addition to the provisions in the Plan with respect to the Falls Improvement Trust,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: and,
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

the Falls Improvement Trust Agreement will provide for, among other things, other actions to be taken by the Falls Improvement Trust and the Falls Improvement Trustee, the removal of the Falls Improvement Trustee or appointment of successor Falls Improvement Trustees, the circumstances under which the Falls Improvement Trustee, in its capacity as such, will be liable for a action or inaction, the effect of actions by the Creditor Trustee, the effect of actions by the Falls Improvement Trustee, and the indemnification of the Falls Improvement Trustee. The Falls Improvement Trust Agreement shall also contain language consistent with IRS Revenue Procedure 94-95 establishing that the Falls Improvement Trust is a liquidating trust. To the extent not set forth in the Plan, the functions and procedures applicable to the Falls Improvement Trust, the powers and duties of the Falls Improvement Trustee, and the rights of the holders of beneficial interests in the Falls Improvement Trust shall be governed by the provisions of the Falls Improvement Trust Agreement.

Finally, in the event the LID Acquisition Settlement Event has not occurred on or before the Effective Date, the Reorganized Debtors, LLV LID Loan Holder and the Falls Improvement Trust may jointly prosecute the LID Acquisition Litigation against LID Acquisition and, if necessary, settle or abandon claims arising out of, or relating to, the LID Acquisition Litigation for the benefit of the Falls Improvement Trust. The Reorganized Debtors and LLV LID Loan Holder shall continue to prosecute and fund the LID Acquisition Litigation unless or until (i) a T-16 Improvement MAC Event has occurred, or (ii) the Reorganized Debtors and LLV LID Loan Holder are relieved of the obligation to prosecute and fund the LID Acquisition Litigation pursuant to the terms of this section. If the Reorganized Debtors conclude, on advice of counsel, that there is not a reasonable likelihood of success on the merits of such litigation, and the Falls Improvement Trustee concurs in such assessment, then the Reorganized Debtors, LLV LID Loan Holder and the Falls Improvement Trust may abandon the LID Acquisition Litigation no earlier than thirty (30) days after filing a notice of the intended abandonment with the Bankruptcy Court and serving such notice on the Phase II Landowners, the holders of allowed Class 9 Claims and any other entity expected to have an interest as a plaintiff in the LID Acquisition Litigation. Upon the expiration of such thirty (30) day period neither the Reorganized Debtors, LLV LID Loan Holder nor the Falls Improvement Trust shall have

61

any further obligations to pursue, appear in, prosecute or fund the LID Acquisition Litigation. If the Falls Improvement Trustee does not concur in such assessment, then the Reorganized Debtors and LLV LID Loan Holder shall be permitted to file a motion or commence an action in the Court seeking a determination that there is not a reasonable likelihood of success on the merits in the LID Acquisition Litigation. If the Court makes such a determination, then the Reorganized Debtors and LLV LID Loan Holder shall have no further obligation to appear in, prosecute or fund the LID Acquisition Litigation. If the Reorganized Debtors and LLV LID Loan Holder are relieved of the obligation to appear in, prosecute and fund the LID Acquisition Litigation, then any entity with an interest in that Litigation may seek to intervene in the Litigation and prosecute and fund it; provided, however, that in such event the Reorganized Debtors and LLV LID Loan Holder shall have no obligation to assist such entity in any way.

**9. No Effect on T-12 LID or T-16 LID.**

Nothing under the Plan is intended to alter, or shall have the effect of altering in any way, any T-12 LID document or T-16 LID document, including, but not limited to, the T-12 LID Acquisition Agreement, the T-16 LID Acquisition Agreement, the final engineer's report dated as of May 1, 1998 for the T-12 LID, the final engineer's report dated as of April 12, 2005 for the T-16 LID, or the amounts or allocations of any assessments levied thereunder. Further, neither the Plan nor the approval of the Plan shall constitute, waive or supersede any consent or approval that is required under applicable nonbankruptcy law or under any and all applicable T-12 LID or T-16 LID documents, with respect to (i) any change, modification or other alteration of any work of improvement within the T-12 LID or T-16 LID, or (ii) any replacement of Reorganized LLV-1 as the T-16 LID Contractor.

**10. Additional Provisions in the Event of a T-16 Improvement MAC Event.**

If a T-16 Improvement MAC Event occurs, and the Falls Improvement Trust, after giving effect to its then assets and the receipt of the T-16 Improvement MAC Payments, notifies the City of Henderson and LLV-1 that it lacks the funds with which to construct or complete construction of the Substitute P-40 Pump Station or acquire the P-40 Pump Station (as applicable), then Reorganized LLV-1 shall, at the duly authorized request of the City of Henderson, convey the land upon which the

62

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: rights under the

Deleted: the

Formatted: Bullets and Numbering

Substitute P-40 Pump Station is located, free and clear of the liens of the Exit Facility, the Falls Improvement Trust Loan, and the X-West Supplemental Loan (as the same may be modified, amended, or refinanced), and shall provide the City of Henderson with such easements and access rights over or through the Reorganized Debtors' real property as reasonably necessary to construct the Substitute P-40 Pump Station on such land.

**F.    Revesting of Assets.**

Except as otherwise provided in the Plan, on the Effective Date all property of the Estates shall vest in the Reorganized Debtors, free and clear of all Claims, liens, encumbrances, and Interests.  From and after the Effective Date, the Reorganized Debtors may operate their business and use, acquire and dispose of property without supervision by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**G.    Preservation/Revesting of Rights of Action/No Waiver of Claims.**

Except as expressly released or otherwise expressly provided in the Plan, pursuant to Bankruptcy Code section 1123(b), the Reorganized Debtors, the Creditor Trust, and the Falls Improvement Trust, as applicable, shall be vested with and shall retain and may enforce any claims, rights, and causes of action that the Debtors or the Estates may hold or have against any entity, all of which are hereby preserved, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, and all rights of disallowance, offset, recharacterization and/or equitable subordination with respect to Claims, and causes of action that have been or may be brought by or on behalf of the Debtors, the Estates, the Creditors' Committee, the Creditor Trust, or the Falls Improvement Trust.  Such claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, shall remain assets of and vest in the Reorganized Debtors, the Creditor Trust, and the Falls Improvement Trust, as applicable, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, have been listed or referred to in the

63

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted:

Deleted: T-16

Deleted: T-16

Deleted: T-16

Plan, the Disclosure Statement, or any other document filed with the Court. Neither the Reorganized Debtors, the Debtors, the Estates, the Creditor Trust, nor the Falls Improvement Trust waives, releases, relinquishes, forfeits, or abandons (nor shall they be estopped or otherwise precluded or impaired from asserting) any claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, or defenses that constitute property of the Debtors or their respective Estates: (a) whether or not such claims, rights, causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, or defenses have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Court, (b) whether or not such claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, or defenses are currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, filed a proof of claim in any of the Cases, filed a notice of appearance or any other pleading or notice in any of the Cases, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, or defenses in the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the right of the Debtors, Reorganized Debtors, the Creditor Trust, or the Falls Improvement Trust to commence, prosecute, defend against, settle, recover on account of, and realize upon any such claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, that the Debtors, their respective Estates, or the Creditors' Committee have or may have as of the Effective Date.

64

The Debtors expressly reserve all their claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, and defenses for later adjudication by the Reorganized Debtors, the Creditor Trust and the Falls Improvement Trust, as the case may be, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, and defenses upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Reorganized Debtors, the Creditor Trust and the Falls Improvement Trust expressly reserve the right to pursue or adopt claims, rights and causes of action, including the Avoidance Actions, the Insider Actions and the claims and causes of action listed on Exhibit 7 to the Disclosure Statement, that are alleged in any lawsuits in which the Debtors are a defendant or an interested party, against any entity, including the plaintiffs or co-defendants in such lawsuits.  Any entity to whom the Debtors have incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtors, or who has received money or property from the Debtors, or who has transacted business with the Debtors, or who has leased equipment or property from or to the Debtors should assume that such obligation, receipt, transfer or transaction may be reviewed by the Reorganized Debtors, the Creditor Trust or the Falls Improvement Trust subsequent to the Effective Date and may be the subject of an action after the Effective Date, whether or not: (a) such entity has Filed a proof of Claim against any Debtor in these Cases; (b) such entity's proof of Claim has been objected to by the Debtors; (c) such entity's Claim was included in the Debtors' Schedules; or (d) such entity's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as contingent, unliquidated or disputed.

**Neither the failure to list a Claim in the Schedules filed by the Debtors, the failure of the Debtors or any other person to object to any Claim for purposes of voting, the failure of the Debtors or any other person to object to a Claim or Administrative Claim before confirmation or consummation of the Plan or the Effective Date, the failure of any person to assert a claim**

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16

Deleted: T-16

Deleted: T-16

1    or cause of action before confirmation or consummation of the Plan or the Effective Date, the

2    absence of a proof of claim having been filed with respect to a Claim, nor any action or

3    inaction of the Debtors or any other person with respect to a Claim, or Administrative Claim,

4    other than a legally effective express waiver or release, shall be deemed a waiver or release of

5    the right of the Reorganized Debtors, the Debtors, the Creditor Trust or the **Falls**

6    **Improvement Trust, before or after solicitation of votes on the Plan or before or after the**

7    Confirmation Date or the Effective Date to (a) object to or examine such Claim or

8    Administrative Claim, in whole or in part or (b) retain and either assign or exclusively assert,

9    pursue, prosecute, utilize, otherwise act or otherwise enforce any claim or cause of action

10   against the holder of any such Claim.

      **H.**    **Objections to Claims.**

11   Except as otherwise provided in Section II.B, above (regarding allowance of Administrative

12   Claims), objections to any Claims shall be Filed and served upon the holder of the affected Claim no

13   later than the date that is the later of (a) six (6) months after the Effective Date, unless extended by

14   the Court, and (b) six (6) months after the date on which the affected proof of Claim has been filed,

15   unless extended by the Court.  After the Effective Date, only the Reorganized Debtors and the

16   Creditor Trust, as applicable, shall have the authority to File, settle, compromise, withdraw or

17   litigate to judgment objections to Claims.  The Creditor Trust shall have exclusive authority to File,

18   settle, compromise, withdraw or litigate to judgment objections to General Unsecured Claims and

19   Phase II Landowner Claims.

20         **I.**    **Distribution of Property Under the Plan.**

21   The following procedures set forth in the Plan apply to distributions made pursuant to the

22   Plan by the Reorganized Debtors, the **Falls** Improvement Trust, the Creditor Trust, the Pre-Petition

23   Agent and the DIP Agent, as applicable, which will make all distributions under the Plan, unless

24   otherwise provided.  In connection with the Plan, to the extent applicable, the Reorganized Debtors,

25   the **Falls** Improvement Trust and the Creditor Trust, in making distributions under the Plan,

26   shall comply with all tax withholding and reporting requirements imposed on them by any

27   governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and

66

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA. 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16

Deleted: T-16

Deleted: T-16

reporting requirements.

**1.   Manner of Payments Under the Plan.**

Payments to domestic entities holding Allowed Claims will be tendered in U.S. Dollars and will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank. Payments made to any foreign creditors holding Allowed Claims may be paid, at the option of the Reorganized Debtors, the Falls Improvement Trust, the Creditor Trust, the Pre-Petition Agent or the DIP Agent, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**2.   No *De Minimis* Distributions.**

Notwithstanding anything to the contrary in the Plan, no payment of less than $10 will be made to any entity pursuant to the Plan.  No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section.

**3.   No Distribution With Respect to Disputed Claims.**

No payments, distributions of other property, or other consideration of any kind shall be made on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim or is deemed to be such for purposes of distribution, and then only to the extent that the Claim becomes, or is deemed to be for distribution purposes, an Allowed Claim.   Unless otherwise provided herein, any holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its distribution within ten (10) days from the date that such Claim becomes an Allowed Claim.

**4.   Distributions to Pre-Petition Lenders and DIP Lenders.**

The Pre-Petition Agent and the DIP Agent, as applicable, shall make the distributions provided for under the Plan in accordance with the provisions of this Plan, the Pre-Petition Credit Facility, the DIP Facility and any other agreements among the proposed recipients of such distributions.

**5.   Delivery of Distributions and Undeliverable/Unclaimed Distributions.**

**a.   Delivery of Distributions in General.**

The Reorganized Debtors, the Falls Improvement Trust or the Creditor Trust, as applicable,

Deleted: T-16

Deleted: T-16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

shall make distributions to each holder of an Allowed Claim by mail as follows: (a) at the address set forth on the proof of Claim filed by such holder of an Allowed Claim; (b) at the address set forth in any written notice of address change delivered to the Disbursing Agent after the date of any related proof of Claim; (c) at the address reflected in the Schedules if no proof of Claim is filed and the Reorganized Debtors, the Falls Improvement Trust or the Creditor Trust, as applicable, has not received a written notice of a change of address; and (d) with respect to Administrative Claims, the address provided by the holder of the Claim or, if none is provided, at the address set forth in the Debtors' books and records.

### b.    Undeliverable and Unclaimed Distributions.

If the distribution to the holder of any Allowed Claim is returned as undeliverable, no further distribution shall be made to such holder unless and until a Reorganized Debtor, the Falls Improvement Trust or the Creditor Trust, as applicable, is notified in writing of such holder's then current address. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Reorganized Debtors, the Falls Improvement Trust or the Creditor Trust, as applicable, pursuant to this Section until such time as a distribution becomes deliverable. All undeliverable cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions. These entities will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Reorganized Debtors, the Falls Improvement Trust or the Creditor Trust, as applicable, but it will be accounted for separately.

Any holder of an Allowed Claim who does not assert a claim in writing for an undeliverable distribution within one (1) year after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a claim against the Debtors, the Reorganized Debtors, the Estates, or their respective property, and the Claim giving rise to the undeliverable distribution will be discharged. The Reorganized Debtors, the Falls Improvement Trust or the Creditor Trust, as applicable, will be enabled and empowered to retain all such undeliverable distributions.

Nothing contained in the Plan shall require the Debtors, the Falls Improvement Trust,

68

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16
Deleted: T-16

**P.** **Conditions to Effectiveness.**

     **1.** **Conditions.**

The Plan shall not become binding unless and until the Effective Date occurs.  The Effective Date is the first Business Day on which all of the following conditions have been satisfied as set forth below or waived:

a.    The Confirmation Order shall have become a Final Order;

b.    No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code has been made, or, if made, remains pending;

c.    Each exhibit, document or agreement to be executed in connection with the Plan shall be in final form acceptable to the Debtors, the Creditors' Committee and the DIP Agent and their respective counsel, and the Operating Agreement and the Creditor Trust Agreement shall be in final form acceptable to the Pre-Petition Agent, as well as the foregoing entities;

d.    The Falls Improvement Trust Agreement shall have been executed and delivered;

e.    The Creditor Trust Agreement shall have been executed and delivered;

f.    The Phase II Landowner Settlement Condition shall have been satisfied;

g.    Creditors holding 90% in amount of the T-16 Improvement-Related Claims shall have executed and delivered the T-16 Improvement Vendor Settlement Agreement;

h.    The Exit Facility, the T-16 LID Loan and the Pump Station Loan shall each be in full force and effect and all conditions therein to the obligations of the parties to such loans shall have been satisfied or waived as set forth in the Exit Facility Documents, the Falls Improvement Trust Credit Agreement, the Pump Station Credit Agreement, as applicable;

i.    The Court shall have found that the DIP Agent and Pre-Petition Agent and their Associated Released Parties have acted in good faith in the negotiation and development of the Plan and the compromises and settlements inherent therein and expressly entered into in connection therewith, and that the DIP Agent, the Pre-Petition Agent, the DIP Lenders, the Pre-Petition Lenders, the Creditors' Committee and the Debtors and their Associated Released Parties have each worked in good faith to compromise their respective claims and that the settlements inherent in the Plan and expressly entered into in connection therewith, and their associated releases and other consideration

71

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16

Deleted: T-16

The issuance and distribution of the New Membership Interests and New Warrants in Reorganized LLV Holdco in connection with the Plan shall be, and shall be deemed to be, exempt from registration under any applicable federal or state securities laws to the fullest extent permissible under applicable non-bankruptcy law and under the Bankruptcy Code, including Section 1145(a) of the Bankruptcy Code.  Without limiting the effect of Section 1145 of the Bankruptcy Code, all documents, agreements and instruments entered into on or as of the Effective Date contemplated by or in furtherance of the Plan shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto.  In addition, all of the New Membership Interests and New Warrants issued pursuant to the Plan shall be deemed to be fully paid, non-assessable and freely tradable to the fullest extent permissible under Section 1145 of the Bankruptcy Code.

**D.    Periodic Reporting.**

As of the Effective Date, the Reorganized Debtors shall not be a public reporting company under the Securities Exchange Act of 1934, as amended.

**E.    Employee Benefit Plans.**

It is anticipated that as of the Effective Date, all of the Debtors' employee benefit plans, programs and benefits existing immediately prior to the Effective Date as to persons employed on the Effective Date shall be retained and constitute obligations of the Reorganized Debtors, provided that nothing herein shall preclude the Reorganized Debtors from amending, modifying or otherwise canceling such benefit plans, programs and benefits, in their discretion, to the extent permitted by law.

**VI.**

**OTHER PLAN PROVISIONS**

**A.    Exculpation:  No Liability for Solicitation or Prosecution of Confirmation.**

Conditioned on the occurrence of the Effective Date, and to the maximum extent permitted by applicable law, none of the Debtors, the Estates, the Reorganized Debtors, the Creditors' Committee (including any member thereof acting in such capacity), the lenders and agent under the Exit Facility, Credit Suisse, the Pre-Petition Agent, the Pre-Petition Lenders, the DIP Agent, the DIP Lenders, or any of the foregoing parties' respective Associated Released Parties shall have or incur any liability to any holder of a Claim or Interest, or to one another, for any act or omission occurring

74

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1    act or omission, transaction, or other activity of any kind or nature that occurred prior to the

2    Effective Date.

3            Except as otherwise provided in the Plan or the Confirmation Order, on and after the

4    Effective Date, all entities who have held, currently hold, or may hold a Discharged Liability

5    against the Debtors, the Estates, the Reorganized Debtors, or their respective property that is

6    based upon any act or omission, transaction, or other activity of any kind or nature that

7    occurred prior to the Effective Date, that otherwise arose or accrued prior to the Effective

8    Date, or that is otherwise discharged pursuant to the Plan, shall be permanently enjoined from

9    taking any of the following actions on account of any such Discharged Liability (the

10   "Permanent Injunction"):  (a) commencing or continuing in any manner any action or other

11   proceeding against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trust, the

12   Falls Improvement Trust or their respective property that is inconsistent with the Plan or the

13   Confirmation Order; (b) enforcing, attaching, collecting, or recovering in any manner any

14   judgment, award, decree, or order against the Debtors, the Estates, the Reorganized Debtors,

15   the Creditor Trust, the Falls Improvement Trust or their respective property other than as

16   specifically permitted under the Plan or the Confirmation Order; (c) creating, perfecting, or

17   enforcing any lien or encumbrance against the Debtors, the Estates, the Reorganized Debtors,

18   the Creditor Trust, the Falls Improvement Trust or their respective property; and

19   (d) commencing or continuing any action, in any manner, in any place that does not comply with

20   or is inconsistent with the provisions of the Plan, the Confirmation Order, or the discharge

21   provisions of Bankruptcy Code section 1141.  Any entity injured by any willful violation of such

22   Permanent Injunction shall recover actual damages, including costs and attorneys' fees, and, in

23   appropriate circumstances, may recover punitive damages, from the willful violator.

24           Notwithstanding the discharge of the Debtors' obligations under the DIP Facility and the Pre-

25   Petition Credit Facility, obligations between and among Credit Suisse, the DIP Lenders, the DIP

26   Agent and their respective Associated Released Parties, and between and among Credit Suisse, the

27   Pre-Petition Lenders, the Pre-Petition Agent and their respective Associated Released Parties set

28   forth in Sections 9.2 and 9.4 of the DIP Facility or Sections 9.2 and 9.4 of the Pre-Petition Credit

85

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

Deleted: T-16

Deleted: T-16

Deleted: T-16

5.    Adjudicate, determine and resolve any and all applications, motions, adversary proceedings, and contested or other matters involving the Debtors, including any relating to the Avoidance Actions, the Insider Actions or the LID Acquisition Litigation, that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Plan, the Creditor Trust Agreement or the Falls Improvement Trust Agreement;

6.    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, the Creditor Trust Agreement and the Falls Improvement Trust Agreement and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Plan;

7.    Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any entity's rights or obligations in connection with the Plan;

8.    Modify the Plan before or after the Effective Date pursuant to Bankruptcy Code section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any order of the Court, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

9.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

10.    Adjudicate, determine and resolve any claims and causes of action provided for and retained under the Plan or pursuant to the Confirmation Order, including the Avoidance Actions and the Insider Actions;

11.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

87

12.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan; and

13.     Enter orders extending the expiration of the Creditor Trust or the Falls Improvement Trust; and

14.     Enter orders closing the Cases.

If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter, this section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## VIII.

## RECOMMENDATION AND CONCLUSION

The Debtors and the Creditors' Committee believe that Plan confirmation and implementation are preferable to any alternatives available to creditors and results in the greatest recovery for the greatest number of constituents under the circumstances. Accordingly, the Debtors and the Creditors' Committee submit that confirmation of the Plan should be supported by creditors as the most favorable alternative.

**Deleted:** T-16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

DATED: June 17, 2010

Lake at Las Vegas Joint Venture, LLC
and its Jointly-Administered Chapter 11 Affiliates

| Deleted: April 2 |
| --- |

By: Frederick E. Chin
Their: President and Chief Executive Officer

Official Committee of Creditors Holding Unsecured
Claims

By: John Cork
Its: Chair

SUBMITTED BY:

*/s/ David M. Guess*
David M. Guess, an Attorney with
KLEE, TUCHIN, BOGDANOFF & STERN LLP
Reorganization Counsel for
Debtors and Debtors in Possession

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA, 90067-6049
TELEPHONE: (310) 407-4000

89